This suit was brought by A. F. Buchanan and Heber Stone against the Houston Texas Central Railroad Company for damages to crops owned by them and their tenants on the Heber Stone farm, north of the bridge of appellant's railroad where it crosses the Brazos river and the adjacent valley, in Waller County, caused by the alleged improper construction of its road across the valley and its bridge across the river, the complaint being that the bridge, and the driftwood lodged against it, obstructed the flow of water in the channel of the river, and caused it to overflow plaintiffs' adjacent lands, and that the embankment on which appellant's track was constructed through the valley impeded the flow of flood water in the valley, and detained it upon plaintiffs' land and the crops growing thereon in May, 1905. They alleged that the entire crops of cotton and corn, worth $14,978, were destroyed, and that the said Buchanan and Heber Stone jointly owned one-half of such crops as landlords, except 56 acres thereof, which they owned entirely, and that they had purchased the other half from their tenants, and that after such purchase they each owned an undivided one-half interest in the cause of action set out in their petition.
After the suit was filed, but before it was tried, the plaintiff Heber Stone died, and Mrs. M. L. G. Stone was thereafter duly appointed temporary administratrix of the estate of Heber Stone, deceased, with power to prosecute the suit; and after qualifying she made herself a party plaintiff as such administratrix, and also sued in her own right, alleging that the claim sued on was the community property between herself and Heber Stone, deceased.
Appellant filed general and special exceptions to plaintiffs' petition, pleaded the general issue, and specially denied that plaintiffs owned the crops that were damaged, or had acquired the crops of the tenants, as set out in the pleadings. It also charged that plaintiffs had caused the damage by cutting a large ditch from the bank of the river into their low lands in the adjacent valley, and by cutting a large gap in their levee on the bank of the river above the bridge, through both of which the high water came from the river on to their land and crops.
The jury returned a verdict in favor of appellees for $8,617.80, which was afterwards apportioned by the court as follows: One-half to A. F. Buchanan, one-fourth to the estate of Heber Stone, deceased, which was directed to be turned over, when collected, to his legal executor or administrator, or if there were none such, then to his legal heirs, and one-fourth to Mrs. M. L. G. Stone.
From the testimony we find the following facts: At the time of the overflow in question Heber Stone was the owner of a plantation on the Brazos river, which was bounded on the west and north by said river, and situated north of appellant's railroad. Stone made a contract with Buchanan by which the latter agreed to superintend the operation of the farm, and to receive for his services one-half of such part of the crops as the tenants paid to Stone as rent. There were about 36 tenants on the farm in 1905, and each agreed to pay to Stone one-half of the crops of cotton and corn raised during the year. In May of that *Page 132 
year an overflow of the river occurred, the plantation was inundated, and the crops damaged in the amount found by the verdict. Each of the tenants sold his claim for damages against appellant to Buchanan and Heber Stone.
Walnut bayou is a natural drain through the farm. There is another low place through the farm west of Walnut bayou, and near appellant's bridge, which is also a natural drain for flood waters. On the east side of the river and along the southern line of the farm the land is low and level. The general flow of the river, as well as Walnut bayou, is in a southerly direction. At the upper or northern side of the plantation the river approaches nearly to the hills on the eastern side of the valley, and at that point it runs within a short distance from the basin of Walnut bayou. From there the river flows westward and southward until a space of something like two miles intervenes between it and Walnut bayou. Through a narrow strip of high ground, separating the river from the bayou, Buchanan and Heber Stone, after the construction of appellant's embankment and bridge, cut a ditch from the bayou to the river. This ditch was at first only two feet deep at the bayou and four and a half feet deep at the river, but at the time of the overflow it had, from natural causes, worn to a depth of 25 or 30 feet at the river. When the flood water arose in the channel of the river it first came upon the plantation at the point where the ditch intersects the bayou. The water came through the ditch in a stream five or six feet deep and about forty feet wide at the river. At one time there was a levee on the bank of the river north of the plantation, but a portion of this had been removed by Buchanan prior to the overflow, but in removing the levee the natural bank of the river was not interfered with. After the flood stage was reached the water also came from the river through this opening.
The appellant, in reconstructing its bridge across the river, built abutments on each side, and erected two large stone piers between the banks. The land on the west side was high, and the embankment there was about fifteen feet high. There was formerly a trestle where the abutment now is, but before the overflow the appellant filled in under the trestle to the height of the track. On the east side there was also an abutment and a row of piling extending into the river. From this abutment, and along the southern boundary of the plantation to the high land, appellant constructed a solid embankment ranging from four to fifteen feet high, with the exception of two culverts and one opening spanned by a trestle. At the time of the overflow appellant had permitted an immense pile of driftwood, 25 or 30 feet high, to accumulate in the river bed against the piers and abutments of its bridge. When the river was nearly at its highest it overflowed its eastern banks between the ditch and the bridge in many places, the largest break being about 400 yards north of the bridge, and this break was about 150 yards wide. Through these breaks an immense quantity of water was discharged from the river on to the plantation; and because of the driftwood at the bridge, the abutments and piling, and the appellant's embankment across the low land, the water was held back on the crops and damaged them. The water which came through the ditch and the opening in the levee passed on down through Walnut *Page 133 
bayou and the other natural drainways, and out through the culverts and opening, and did not overflow the plantation, and the crops would not have been damaged but for the river breaking over the banks, and this would not have occurred but for the obstructions before mentioned, which were erected and permitted by appellant. Appellant contends that the injury to the crops was due to back-water from below, or south of the bridge, backing up through the culverts and opening on to the crops, but this contention has no support in the testimony, as it is clearly shown that the water on the north side of the bridge and culverts was from twelve to twenty-four inches higher than on the south side, and that the water at no time backed on to the land from below the bridge.
We conclude that the damage to the crops was due to the negligence of appellant in erecting and permitting the obstructions before mentioned, and that the cutting of the ditch and removing the portion of the levee by Buchanan and Heber Stone did not proximately cause or contribute to the overflow or to the damage occasioned thereby.
By its fourth assignment of error appellant complains of the overruling by the trial court of its general demurrer to the plaintiff's' petition, insofar as it applied to the suit of Mrs. Stone as temporary administratrix of the estate of Heber Stone, deceased, and as to her personal demand, on the ground that the petition showed no right of action by Mrs. Stone in the capacities in which she sued, in that the petition was filed by Heber Stone before his death, and was not thereafter adopted by Mrs. Stone when she made herself party plaintiff.
By the fifth and sixth assignments appellant complains of the judgment rendered in favor of Mrs. Stone, both as administratrix and individually, and in overruling its motion for a new trial, because there was no pleadings to support such a judgment.
The petition upon which the case was tried was filed by Buchanan and Heber Stone, and set up a good cause of action in Stone for one-half of the recovery therein sought. After the death of Stone Mrs. M. L. G. Stone was appointed temporary administratrix of his estate, with express authority to prosecute the suit. She afterwards filed her written application in the case, setting up the death of Stone, her appointment and qualification as administratrix of his estate, alleged that the damages claimed in the suit were the community property of herself and Heber Stone, deceased, and prayed to be allowed to make herself a party plaintiff, and prosecute the suit as such administratrix, and for her own use and benefit. Mrs. Stone filed no other pleading than the application above referred to, and she did not therein refer to the petition filed by Buchanan and Stone, nor expressly adopt as her own its allegations. Appellant contends that, by not expressly adopting the pleadings theretofore filed, there was no pleadings in the case to support a judgment in her favor, and that therefore the court should have sustained its general demurrer, or should have sustained its motion for a new trial. With this contention we can not agree. It is true that Mrs. Stone did not expressly adopt the pleadings theretofore filed by Buchanan and Heber Stone, but by appearing and setting up the facts authorizing the prosecution of the suit by her, and by going into the trial on such pleadings, she thereby must be held to *Page 134 
have adopted the pleadings as truly as if she had done so expressly. The assignments are overruled.
By its eleventh assignment appellant complains that the court erred in not sustaining its special exception, which was addressed to the plaintiffs' failure to allege the amount of each of the numerous claims for damages assigned by their tenants to them, or to state the total amount of such claims. The petition stated that the plaintiffs had acquired the claims of all their tenants, giving their number; further stated the total of the damage to all the crops on the plantation; alleged the total number of acres in cultivation, and that the tenants owned one-half of the crops at the time of the overflow, except fifty-six acres, which were owned by Buchanan and Stone. To the petition there was attached as an exhibit, and made a part thereof, a statement showing the name of each tenant, the total number of acres tilled that were lost, and the number of acres being cultivated by each. We are of the opinion that the petition was not obnoxious to the exception. The assignment is overruled.
Appellant's twelfth assignment, complaining of the ruling of the court in admitting, over its objection, certain testimony of the witness Meredith, is not presented as required by the rules, in that, in the statement subjoined, the testimony, the admission of which is complained of, is not set out, nor any reference to the pages of the record where it can be found given. We therefore decline to consider it.
By the thirteenth and fourteenth assignments appellant complains of the refusal of the court to instruct the jury to render a verdict for the defendant, as requested by it in its special charge No. 1, because the undisputed evidence showed that the flood water came through the ditch cut by Buchanan, and through the gap in the levee made by plaintiffs, and flowed upon the crops and materially contributed to the damage thereof. Our findings of fact dispose of these assignments adversely to appellant's contention.
Appellant's seventh, eighth, ninth and tenth assignments have been duly considered, and we find no reversible error in any of them. They are therefore overruled.
By its first assignment appellant complains that the court erred in rendering judgment against it in behalf of Mrs. M. L. G. Stone, in her own right, for one-fourth of the recovery, because there was no evidence showing, or tending to show, that she owned any interest in the crops alleged to have been damaged, or that she had acquired any interest in the claims of the tenants named in plaintiffs' petition. The second and third assignments raise, in different ways, substantially the same question. These assignments are well taken, and must be sustained. The evidence of Mrs. Stone's ownership of any part of the crops in her own right, or the acquirement by her of any portion of the claims of the tenants, is wholly lacking. The evidence shows without dispute that one-half of the cause of action sued on belonged to Buchanan and the other half to the estate of Heber Stone. The jury, under the charge, found generally in favor of plaintiffs in the amount of their verdict, and the court afterward, in rendering judgment upon the verdict, apportioned one-half of the amount to Buchanan, one-fourth to the estate of Heber Stone and one-fourth to Mrs. M. L. G. *Page 135 
Stone. In the absence of any evidence that Mrs. Stone was entitled to any part of the judgment, and in view of the undisputed evidence that the estate of Heber Stone was entitled to a judgment for one-half of the amount found by the jury, this action of the court was erroneous. We will therefore render such judgment as the court below should have rendered on the verdict of the jury. The judgment as to Buchanan is affirmed; and as to the estate of Heber Stone, deceased, so reformed as to render judgment in favor of Mrs. M. L. G. Stone, as temporary administratrix of the estate of Heber Stone, deceased, for one-half of the amount found by the verdict of the jury, and as to Mrs. M. L. G. Stone the judgment is reversed, and judgment here rendered that she take nothing in her own right by this suit.
Reformed and Affirmed.
Writ of error refused.