TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING










NO. 03-01-00283-CV







Income Administrator Services, Inc., Appellant




v.




Samuel E. Payne, Appellee








FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT


NO. 96-426-C26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING








 We withdraw our opinion and judgment dated December 20, 2001, and substitute the
following opinion.

 Appellant Income Administrator Services, Inc. ("IAS") asks this Court to determine
whether the district court abused its discretion in granting Samuel Payne's motion for sanctions. In
two issues, IAS claims the district court erred by (1) awarding sanctions under Chapter 10 of the
Civil Practices and Remedies Code, and (2) awarding sanctions in the form of attorney's fees
incurred since initiation of the action. Because appellant has not shown that the district court abused
its discretion, we will overrule IAS's issues and affirm the district court's judgment.


BACKGROUND

 In Fall 1992, IAS employed Payne as its broker to purchase real estate in Travis
County. After several unsuccessful attempts to purchase the property on behalf of IAS, Payne
purchased the real estate for himself. Four years later on November 7, 1996, IAS brought suit
against Payne claiming breach of contract, fraud, and breach of fiduciary duty. The jury failed to
find Payne liable. Thereafter, Payne filed a motion for sanctions claiming IAS made allegations
without factual support and for improper purposes. On February 1, 2001, the district court rendered
judgment on the jury's verdict that IAS take nothing; on April 11, 2001, the court granted Payne's
motion for sanctions.

 The basis for the sanctions against IAS is an allegation (sometimes referred to as the
"critical allegation") contained in both its original petition filed November 7, 1996, and in its first
amended original petition filed June 14, 2000. The critical allegation states:


At some point late in October or early November, 1992, Defendant advised Plaintiff
to cease any and all negotiations on the property. Plaintiff complied with this request
because he believed that Defendant, his broker, was more experienced and qualified
in real estate transactions. On November 25, 1992, while still under contract as
Plaintiff's agent, Defendant, acting in his own capacity and without informing or
notifying Plaintiff of his actions, began negotiations on his own behalf, and
ultimately purchased the property in question for himself.



Payne's motion addressed the amended petition. The district court found that "[t]he Plaintiff's
attorney signed the First Amended Original Petition filed on June 12, 2000 for the Plaintiff in
violation of Tex. Civ. Prac. & Rem. Code § 10.001, subsections (1) and (3)." The court ordered IAS
to pay Payne sanctions in the amount of $165,136.95 for "[t]he reasonable expenses and attorney's
fees incurred by Defendant in presenting his motion for sanctions" and "the attorney's fees and
expenses paid by the Defendant to his attorneys, which were reasonable and necessary to defend this
case through trial."


DISCUSSION

 In its first issue, IAS contends that the district court erred by awarding sanctions
because the critical allegation, while difficult to prove, does not violate Chapter 10. We review a
district court's award of sanctions provided in Chapter 10 of the Civil Practices and Remedies Code
under the abuse of discretion standard. Herring v. Welborn, 27 S.W.3d 132, 143 (Tex. App.--San
Antonio 2000, pet. denied). When reviewing a district court's finding under the abuse of discretion
standard, we may not substitute our judgment for that of the district court. Schlager v. Clements, 939
S.W.2d 183, 191 (Tex. App.--Houston [14th Dist.] 1996, writ denied). Rather, we are limited to
determining whether the district court abused its discretion by either acting arbitrarily and
unreasonably, without reference to guiding rules or principles, or misapplying the law to the
established facts of the case. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985). A district court abuses its discretion in imposing sanctions only if it bases its order on an
erroneous view of the law or a clearly erroneous assessment of the evidence. Monroe v. Grider, 884
S.W.2d 811, 816 (Tex. App.--Dallas 1994, writ denied). In deciding whether the sanctions
constitute an abuse of discretion, we examine the entire record. Herring, 27 S.W.3d at 143.

 Section 10.004(a) of the Civil Practices and Remedies Code authorizes a district court
to impose sanctions for a violation of Section 10.001: "A court that determines that a person has
signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a
party represented by the person, or both." Tex. Civ. Prac. & Rem. Code Ann. § 10.004(a) (West
Supp. 2002). Sections 10.001(1) & (3) of the Civil Practices and Remedies Code state:


The signing of a pleading or motion as required by the Texas Rules of Civil
Procedure constitutes a certificate by the signatory that to the signatory's best
knowledge, information, and belief, formed after reasonable inquiry: 



 the pleading or motion is not being presented for any improper purpose,
including to harass or to cause unnecessary delay or needless increase in the cost
of litigation; . . . [and] 



(3) each allegation or other factual contention in the pleading or motion has
evidentiary support or, for a specifically identified allegation or factual
contention, is likely to have evidentiary support after a reasonable opportunity
for further investigation or discovery . . . .



Id. § 10.001(1), (3).

 In its order granting Payne's motion for sanctions, the district court found that the
critical allegation lacked evidentiary support and that IAS's "First Amended Original Petition filed
on June 12, 2000 was presented for improper purposes, namely for harassment, and to increase the
costs and risks of litigation to [Payne]." The order recites that the only evidence supporting the
critical allegation was the testimony of Mr. Garret Lacour, IAS's president, and that in order for the
jury to have found Payne not liable, it had to believe Lacour was lying. The order further states,
"The Court agrees with this implied finding of the jury and further finds independently of the jury
that the Plaintiff was lying."

 Our review of the record leads us to conclude that appellant has not proven that the
district court abused its discretion in imposing sanctions. The record contains sufficient evidence
supporting the district court's finding that IAS made the critical allegation for improper purposes,
namely harassment, and to increase the costs and risks of litigation to Payne. See id. § 10.001(1). (1) 
Lacour testified that Payne advised him to stop negotiating for the property early in November 1992;
two witnesses, Bill Naddef and Rodney Varner, testified to the contrary. Each said that Payne
continued to negotiate as trustee on behalf of IAS until Payne's and IAS's buyer's representation
agreement expired on December 15, 1992. Lacour further testified that Mr. Bill Yahn told him
sometime in late November or early December 2000 that Payne was attempting to purchase the
property for himself. Yahn, however, testified that while he may have informed Lacour that another
prospective buyer had made an offer for the property, he did not tell Lacour the identity of the
prospective buyer. Finally, Lacour testified that he was shocked and offended by Payne's actions,
but believed that Payne had already secured a contract on the property and that it was too late to
pursue it further. Yahn testified that Lacour attempted to purchase the property again in April 1993.

 The district court's finding that IAS made the critical allegation in violation of
Chapter 10 is further supported by the affidavit of Don Williams. In his affidavit, Williams stated
that Lacour told Williams "his trial was coming up, and that he knew he wouldn't win it, but he was
going to 'take Mr. Payne for a ride,' that is, cause him to spend a lot of money." (2) On rehearing,
appellant contends that this Court and the trial court were barred from considering this affidavit as
a matter of law. Because IAS makes this complaint for the first time on rehearing, it is waived. The
complaint on appeal must conform to that raised in the trial court. See Tex. R. App. P. 33.1.

 The motion for sanctions, along with the Williams affidavit, was filed October 25,
2000. IAS filed a response along with Lacour's affidavit stating that he did not discuss the case in
detail with Williams. Without referring to Williams by name and without citing any reason or
supporting authority, the response alleges Payne should have disclosed the affiant's identity before
trial and should have presented the affiant at trial for cross-examination, that presenting the charge
in an affidavit "raises suspicion as to the veracity of the affidavit," and that the affidavit is defective
on its face. At the hearing on Payne's motion for sanctions, IAS lodged the following oral objection:


Mr. Williams was not identified as a witness . . . . They didn't identify him, didn't
tell us about him, didn't bring this up at trial, didn't claim any of this where we could
talk to him, cross examine, do all those things . . . . Even the face of the affidavit, it
is speculation as to what that's supposed to mean . . . . But the affidavit is improper. 
It's not relevant or admissible.



The record of the hearing reveals that IAS failed to obtain a ruling on its objection, and therefore
failed to preserve any error for appeal. (3) Further, IAS did not complain about Payne's failure to
present Williams as a witness at the sanctions hearing.

 IAS devotes one paragraph of its initial brief to its objection to Williams's
affidavit--different than that urged at the hearing--complaining on appeal that contested issues
ordinarily should be decided by sworn testimony rather than affidavit and that sanctions "should not
be based solely" (emphasis added) (4) on controverted affidavits:


Payne should not be able to assert a naked, controverted affidavit of a person who
was never deposed as support for his Motion for Sanctions and not call him as a
witness at the hearing. Such failure to call Mr. Williams to the evidentiary hearing
raises suspicion as to the validity of the affidavit. Sanctions should not be based
solely on controverted affidavits. (5)



 In its reply brief, IAS expands on its complaint concerning Williams's affidavit--that
because Williams was not a live witness at the sanctions hearing, his affidavit is "not sufficient":
"The affidavit is completely uncorroborated and IAS filed a controverting affidavit. Because a
hearing on a motion for sanctions is an evidentiary hearing, Payne should have presented Mr.
Williams as a live witness at the hearing, otherwise his affidavit is not sufficient." IAS contends:


[O]nce the ex parte affidavit of Mr. Williams was controverted, Payne, as the
movant, should have produced Mr. Williams for live testimony for adequate cross-examination on the sanctions issue. Because Payne failed to do so, Mr. Williams
[sic] affidavit has no effect and Payne is left without any support for his motion . . . .



 Clearly, IAS's objections to the affidavit at the hearing--that Williams was not
identified as a trial witness and that the affidavit was defective and improper--are different from
those urged on appeal--that Williams did not testify at the sanctions hearing and that sanctions
"should not be based solely" on Williams's affidavit once it was controverted.

 In light of Williams's affidavit and the evidence controverting Lacour's testimony,
sanctioning IAS for the critical allegation was within the district court's discretion to deter repetition
of IAS's conduct in this case or comparable conduct by others similarly situated. See id. § 10.004(b). 
We overrule IAS's first issue. (6)


Award of Attorney's Fees for the Entire Case

 IAS contends that even if the district court did not err in granting Payne's motion for
sanctions under Chapter 10, it erred in awarding Payne attorney's fees for the entire case. Section
10.004(c)(3) authorizes a district court to impose sanctions in the form of attorney's fees: "A
sanction may include . . . an order to pay to the other party the amount of the reasonable expenses
incurred by the other party because of the filing of the pleading or motion, including reasonable
attorney's fees." Id. § 10.004(c)(3). IAS claims that section 10.004(c)(3) limits the amount of
attorney's fees that could be awarded as sanctions to those incurred after the June 2000 petition:


With regard to awarding attorneys' fees to the other party, the Trial Court only has
the discretion upon finding a violation of section 10.001 to order the payment of
reasonable expenses and attorneys' fees incurred by the other party "because of the
filing of the pleading."



 IAS contends that 10.001 provides for sanctions relating to the filing of a particular
pleading. IAS urges that, despite the fact its original 1996 petition contained the critical allegation,
Payne's motion for sanctions complained only of the June 2000 petition, and therefore IAS did not
have notice and opportunity to respond regarding the original petition. (7) Furthermore, IAS contends
that its "knowledge, information and belief . . . at the time of the Original Petition and at the time
of the First Amended Petition were completely different which would necessitate different arguments
and responses of both parties." The essence of IAS's issue is that, based on its knowledge,
information, and belief at the time its original petition was filed, the critical allegation was "likely
to have evidentiary support after a reasonable opportunity for further investigation or discovery." 
See id. § 10.001(3). Therefore, IAS contends, at most it could be sanctioned for filing its June 2000
petition, the court could only award attorney's fees incurred thereafter, and the district court erred
by awarding sanctions for the entire case.

 We measure whether an imposition of sanctions is just by two standards. 
Transamerican Natural Gas Corp. v. Powell, 811 S.W.2d 913, 917 (Tex. 1991). (8) First, a direct
relationship must exist between the offensive conduct and the sanction imposed. Id. This means
that a just sanction must be directed against the abuse and toward remedying the prejudice caused
the innocent party. Id. Sanctions may also be imposed to secure compliance, deter future violations,
and punish violators. Bodnow Corp. v. City of Hondo, 721 S.W.2d 839, 840 (Tex. 1996). Second,
just sanctions must not be excessive. Transamerican, 811 S.W.2d at 917. "The punishment should
fit the crime." Id.

 Here, the district court imposed sanctions in the amount of $165,136.95 representing
"[t]he reasonable expenses and attorney's fees incurred by Defendant in presenting his motion for
sanctions" and "the attorney's fees and expenses paid by the Defendant to his attorneys, which were
reasonable and necessary to defend this case through trial." The court further stated that the sanction
was "sufficient to deter repetition of Plaintiff's conduct in this case or comparable conduct by others
similarly situated."

 We cannot say that the sanction imposed by the district court is excessive or violates
the guidelines elucidated in Transamerican. See id. The sanction imposed bears a direct relation
to the offensive conduct at issue here--IAS's efforts to increase the cost of litigation and harass
Payne. The purpose of the sanction in this case was not only to reimburse Payne for the costs of fees
and expenses incurred in the litigation, but also "to deter repetition of Plaintiff's conduct in this case
or comparable conduct by others similarly situated." Because the sanction had a punitive purpose,
the amount of the award was within the discretion of the district court. Were we to limit the
sanctions to Payne's attorney's fees and costs incurred after the June 2000 petition, we would enable
future parties to avoid responsibility for making unsupported allegations by filing an amended
petition shortly before trial, as IAS did in this case. Such a lesser sanction would not serve the goal
of deterring "comparable conduct by others similarly situated." Accordingly, we cannot say the
district court clearly abused its discretion by awarding $165,136.95 in sanctions. IAS's second issue
is overruled.

CONCLUSION

 We overrule IAS's complaints on appeal. We therefore affirm the judgment of the
district court.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: February 14, 2002

Do Not Publish

1. IAS contends the district court erred by relying on irrelevant testimony:


Payne made no effort to and did not offer any evidence as to the relevant time period of
June 12, 2000 when the pleading was signed, but merely relied on trial testimony. . . . 
Therefore, because the attempted evidentiary support for the Motion for Sanctions was not
based on the relevant time period, the Trial Court abused its discretion in finding a
violation of section 10.001(3) based on the evidence offered at trial.


Contrary to IAS's contention, the district court may consider the entire record and all the offending
parties' conduct in determining whether to impose sanctions. See Overstreet v. Home Indemn. Co.,
747 S.W.2d 822, 826 (Tex. App.--Dallas 1987, writ denied) (holding that in imposing sanctions the
court is not limited to considering the specific violation for which the sanction is to be imposed, but
can consider everything that has occurred during the litigation). As such, we cannot say the district
court erred by considering evidence of IAS's knowledge and belief prior to June 12, 2000.
2. IAS contends that "[a]t most, IAS's president acknowledged that his case was weak and he
would have a difficult time prevailing." IAS contends that "the case law is clear that a weak case
is not a sanctionable case." We agree that a case is not sanctionable merely because it is weak. See
Falk & Mayfield L.L.P. v. Molzan, 974 S.W.2d 821, 824 (Tex. App.--Houston [14th Dist.] 1998,
pet. denied). Neither is it proper to punish a claimant merely because the jury is unpersuaded by the
plaintiff's proof. However, the district court did not sanction IAS because its case was weak or
solely for Lacour's statement to Williams; IAS was sanctioned because the district court found,
based on all of the evidence, that the pleading was filed "for improper purposes, namely for
harassment, and to increase the costs and risks of litigation to [Payne]."
3. Although the specific conversation may have been revealed for the first time in the affidavit,
the record shows that IAS listed Williams as a fact witness in its interrogatory responses and Payne
included him in his as well. We note also that more than two months passed between the filing of
the affidavit and the sanctions hearing. Nevertheless, apparently IAS never deposed Williams.
4. As discussed in the preceding portion of this opinion, the district court's sanction award is
supported by evidence other than the Williams affidavit.
5. We note that the primary case IAS cites as authority for its proposition that Williams's
affidavit is insufficient involves the use of affidavits as evidence in a motion for new trial following
default judgment. See Estate of Pollack v. McMurrey, 858 S.W.2d 388, 392 (Tex. 1993). The intent
and conscious indifference of the affiants who failed to answer the suit were in issue. Id. at 391. 
They filed affidavits excusing their failure but refused to appear for depositions following notice. 
Id. at 390-91. The other party filed a formal objection to the affidavits under Texas Rule of Civil
Procedure 215.2(b)(4) asking the trial court to exclude the affidavits. Id. at 391. The Supreme Court
ruled that a disputed question of intent or conscious indifference cannot be decided on one's own
affidavit; the contesting party is entitled to examine the affiant at a hearing or in a deposition. Id.
at 391-92. Here, of course, the affiant's intent was not in issue, IAS did not attempt discovery that
Williams refused, and IAS did not file an objection under Rule 215.
6. IAS "assumes" that, because we do not specifically address the district court's finding that IAS
violated section 10.001(3), we agree with IAS that the district court abused its discretion in making
such a finding. The district court did not abuse its discretion in sanctioning IAS for violating section
10.001(1); therefore, we need not address IAS's complaint concerning section 10.001(3) in order to
reach a final disposition of this appeal. See Tex. R. App. P. 47.1.
7. IAS mischaracterizes both Payne's motion for sanctions and the district court's order. Both
the motion and order are clearly based on the critical allegation. Because IAS's original 1996
petition contained the critical allegation, the district court did not abuse its discretion in awarding
reasonable expenses and attorney's fees incurred thereafter.
8. While Transamerican addresses sanctions awarded under the Texas Rules of Civil
Procedure rather than section 10.001, the same policy considerations underlie both sanctions
provisions. Therefore, we apply the same standards for determining whether an imposition of
sanctions is just.